COURT OF APPEALS
DECISION
DATED AND FILED

February 5, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2272-CR**

Cir. Ct. No. 2016CF422

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

ALAN M. JOHNSON,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Walworth County: PHILLIP A. KOSS, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Alan M. Johnson appeals from a judgment of conviction for second-degree reckless homicide with use of a dangerous weapon. On appeal, Johnson asserts the circuit court erred by denying his motion for a mistrial following an incident that occurred during jury deliberations; by excluding certain evidence from his trial; and by failing to properly instruct the jury. We reject his arguments and affirm the conviction.

## BACKGROUND

¶2 This matter returns to us following remand for a new trial. As background, Johnson shot and killed his brother-in-law, K.M., in K.M.'s home. *State v. Johnson* (*Johnson I*), 2021 WI 61, ¶¶9-10, 397 Wis. 2d 633, 961 N.W.2d 18. According to Johnson's version of events, K.M., who married Johnson's older sister when Johnson was a child, repeatedly physically abused and one time sexually abused him. *Id.*, ¶6. Years earlier, Johnson found what he believed to be child pornography on K.M.'s computer. *Id.*, ¶7. Johnson eventually reported this to authorities but was told that the evidence was "stale." *Id.*

¶3 On October 24, 2016 at around 11:45 p.m., Johnson snuck into K.M.'s home intending to discover "fresh pictures" of child pornography on K.M.'s computer to deliver to the police. *Id.*, ¶8. Johnson brought a gun to protect himself because he was scared of K.M. *Id.* After two hours of searching K.M.'s computer, Johnson believed he had "found what they needed." *Id.*

¶4 Suddenly, K.M. appeared in the doorway and saw Johnson. *Id.*, ¶9. According to Johnson, K.M. shut the door and then burst through the door and attacked Johnson. *Id.* The ensuing altercation left K.M. dead; Johnson shot him five times. *Id.*, ¶¶1, 9.

¶5    The State charged Johnson with first-degree intentional homicide, use of a dangerous weapon, and armed burglary. At trial, Johnson claimed self-defense in killing K.M. and requested jury instructions on perfect self-defense and lesser-included homicide offenses. The circuit court instructed the jury on first-degree intentional homicide, second-degree intentional homicide, first-degree reckless homicide, and imperfect self-defense. *Id.*, ¶12. It refused to instruct the jury on perfect self-defense or, as relevant, second-degree reckless homicide. *Id.*

¶6    Following trial, the jury found Johnson guilty of first-degree reckless homicide. It acquitted Johnson of burglary.

¶7    In ***Johnson I***, Johnson argued, in part, the circuit court erred by failing to instruct the jury on perfect self-defense and the lesser-included offense of second-degree reckless homicide. *Id.*, ¶¶20, 27. He also argued the circuit court erred by prohibiting testimony that Johnson found child pornography on K.M.'s computer the night K.M. was killed. *Id.*, ¶4.

¶8    Our supreme court agreed the circuit court erred by refusing to instruct the jury on perfect self-defense and second-degree reckless homicide. *Id.*, ¶¶26, 31. However, the court determined the circuit court did not err by prohibiting testimony that Johnson found child pornography on K.M.'s computer on the night K.M was killed. *Id.*, ¶ 36. The case was remanded for a new trial. *Id.*, ¶37. The court noted that, on retrial, the State was "precluded from trying Johnson for burglary and first- and second-degree [intentional] homicide" because the first jury had acquitted him on those charges. *Id.*, ¶37 n.20.

¶9    On remand, the State elected to retry Johnson. An amended information charged Johnson with one count of first-degree reckless homicide, use of a dangerous weapon.

¶10    Prior to the new trial, Johnson moved for an order permitting him to present evidence of the images found on K.M.'s computer. Specifically, Johnson wished: to testify he found child pornography and other "disturbing images" on K.M.'s computer shortly before K.M. attacked him; to publish the non-pornographic images to the jury; and to present expert testimony confirming the presence of images on K.M.'s computer that a reasonable person would believe to constitute illegal child pornography and confirming that Johnson saw those images on the night in question. The circuit court denied the motion.

¶11    It explained:

> I've reviewed obviously the transcripts. I reviewed that motion hearing where this was discussed, and [the previous circuit court's] decision. I've reviewed the pleadings filed by all the parties here. Certainly I've reviewed both the court of appeals and the supreme court's decision.
>
> And my understanding is that the [S]tate is not conceding that there is child pornography on the victim's computer. They would concede that there are unseemly photographs, perhaps nude photographs, perhaps what might be considered pornography, but not necessarily of children.

The circuit court emphasized that the detective who examined K.M.'s computer testified at the original motion hearing that, although there were some pornographic images on the computer, the detective could not determine whether the females in the photographs were under eighteen years old.

¶12    The circuit court continued:

> [W]hile I agree that [Johnson's] subjective state of mind is incredibly important, his fear is what [K.M.] will do. But if it's not child pornography, the [S]tate can easily make the argument [Johnson] wouldn't have to fear it.
>
> So why can't, as the [previous circuit court] allowed, "I found what I was looking for," goes to his state of mind of

4

whether [Johnson] thought … the victim would be angry enough to attack him? If we allow all these images, they are distasteful. We would all agree on that. And I agree with the supreme court and [the previous circuit court] and ultimately the [S]tate on this, that it is going to unfairly prejudice the [S]tate if they have to see all of these images, and they would. And then the [S]tate is going to have to present some evidence to mitigate this, that it really isn't child pornography, to try and present a reasonable reason that [K.M.] wouldn't be concerned.

....

[T]o show these pictures to the jury is adding days to trial and adding a distasteful view that is kind of an: Eh, [K.M.] didn't – doesn't-deserve-to-live kind of argument. Or who cares, he's just a creep. And that's not what we want the jury to do. We want the jury to focus on [Johnson's] state of mind, which I'm not preventing, and for the same reasons that the supreme court upheld it.

¶13 Ultimately, the circuit court excluded the evidence on the basis it believed it would be a waste of time, confuse the issues, and unfairly prejudicial. The court concluded that Johnson could testify at trial:

I went there because I knew there was child -- I knew in the past there had been child pornography; I wanted to turn it over to the police if I found it again. I found what I was looking for, and I was going to turn that over to the police.

The clear implication to a jury is I found child pornography.

The court also precluded the State from arguing "to the jury that it has not seen evidence to corroborate [Johnson's] testimony."

¶14 The case proceeded to trial. The testimony presented to the jury generally followed the testimony presented at the first trial.

¶15 In Johnson's second trial, the jury was instructed on perfect self-defense. As related to the privilege of self-defense, the circuit court also instructed the jury on the law of provocation. As part of the provocation

5

instruction, and over Johnson's objection, the circuit court included an optional pattern jury instruction paragraph that stated: "A person who provokes an attack whether by lawful or unlawful conduct with intent to use such an attack as an excuse to cause death or great bodily harm to another person is not entitled to use or threaten force in self-defense." *See* WIS JI—CRIMINAL 815 (2020).

¶16    During jury deliberations, the circuit court received a question from the jury: "Do you waive your right to self-defense if you trespass into a home based on the castle law?" As the circuit court began to discuss with the parties an appropriate response, it received word from the jury foreperson that another juror had looked up a definition of the castle doctrine on her cellular phone. Johnson moved for a mistrial.

¶17    The circuit court questioned the foreperson about the situation. The foreperson advised the circuit court that some other jurors brought up the castle doctrine and

> [a]nother juror suggested we bring the question to you. We did.
>
> While I was writing the question out, another person, a third person, brought that up on her cell phone to look up the definition. As I was walking back in, she started to speak about it, and we all shut her down.

The foreperson advised that the juror, M.F., had not shared what she read on her cellular phone with anyone else.

¶18    Johnson renewed his motion for a mistrial. The State responded that the circuit court should instead provide a curative instruction to the jury. The circuit court questioned M.F. about the situation.

¶19    M.F. admitted to the circuit court she had used her cellular phone to look up the definition of the castle doctrine. She explained, "I didn't understand what it was. And [the other jurors] were using it as a point, pretty strong point." M.F. stated she read the entire definition to herself and she read the first words of the definition—"The castle doctrine is"—to the other jurors before "someone said stop, stop. And we all kind of stopped, and then it was reported." M.F. told the circuit court that she understood she could not consider anything that she had read on the internet.

¶20    Outside the presence of the jury, the court addressed the parties:

> [O]bviously [the] castle doctrine is in the news. It has been for years. Politicians have made much hay that we need a castle doctrine. So it's not surprising that it would come up in a self-defense case, just in common sense, without somebody looking it up.

¶21    After further discussion, the circuit court decided, over Johnson's objection, it would give a curative instruction. The jury returned to the courtroom. The court instructed:

> Normally we don't interfere with deliberations, but I don't want you to go into areas that need not be explored.
>
>     And I know that there's been discussion about the castle doctrine. The castle doctrine is a complex legal issue, but it does not apply at all to the facts of this case, and you should not consider it in any way. We -- There would have been an instruction on it if it applied. Please do not do any research on this case. The parties have spent a lot of time and money on this.
>
>     …..
>
> So it[] -- need not be a topic of discussion, and you may continue to deliberate. Reread [the jury instruction] if you need to, but please do not do any research. It's not a point of discussion.

7

The circuit court also had the bailiff collect the jurors' cellular phones for the remainder of deliberations.

¶22 Ultimately, the jury found Johnson guilty of second-degree reckless homicide, use of a dangerous weapon. Johnson renewed his motion for a mistrial on the basis that "one of the jurors researched on her cellular telephone the castle doctrine" and it was "not exactly clear how much of that was communicated to the remainder of the jury."

¶23 The circuit court denied the motion. It observed that both the foreperson and the juror advised the court that the information had not been conveyed to the rest of the jury. The court continued:

> But I instructed them that -- quickly and strongly that the castle doctrine had nothing to do with this case whatsoever, and I can only assume, as with any jury instruction, that they took it to heart and that their decision had nothing to do with the -- whatever [M.F.] found.

Johnson appeals. Additional facts will be included below.

## DISCUSSION

¶24 Johnson raises three arguments on appeal. He asserts the circuit court erred by: (1) denying his motion for a mistrial following the juror's actions during deliberations; (2) by excluding evidence of the images that Johnson found on K.M.'s computer; and (3) including an optional pattern-jury-instruction paragraph in the provocation instruction. We address each argument in turn.

### I.     Mistrial

¶25     Johnson first argues the circuit court erred by denying his motion for a mistrial after learning a juror looked up the definition of the castle doctrine during deliberations.  We review "a circuit court's decision to grant or deny a motion for mistrial for an erroneous exercise of discretion." *State v. Debrow*, 2023 WI 54, ¶15, 408 Wis. 2d 178, 992 N.W.2d 114.  A circuit court properly exercises its discretion if it applied the proper legal standard to the relevant facts and reached a reasonable discretionary decision. *Id.*  However, "not all errors warrant a mistrial and the 'law prefers less drastic alternatives, if applicable and practical.'" *State v. Givens*, 217 Wis. 2d 180, 191, 580 N.W.2d 340 (Ct. App. 1998) (citation omitted).

¶26     "A party is entitled to a new trial when prejudicial extraneous information is brought to the attention of the jury." *Manke v. Physicians Ins. Co. of Wis.*, 2006 WI App 50, ¶17, 289 Wis. 2d 750, 712 N.W.2d 40.  The State must prove beyond a reasonable doubt that the extraneous information did not contribute to the guilty verdict. *State v. Eison*, 194 Wis. 2d 160, 177-78, 533 N.W.2d 738, 745 (1995).  We consider whether there is a reasonable possibility that the information "would have a prejudicial effect upon a hypothetical average juror." *Id.* at 178.  We evaluate the "impact of the error by considering such factors as the nature of the extraneous information and the circumstances under which it was brought to the jury's attention; the nature of the [S]tate's case; the defense presented at trial; and the connection between the extraneous information and a material issue in the case." *State v. Poh*, 116 Wis. 2d 510, 530, 343 N.W.2d 108 (1984).

¶27 We conclude that in this case, one juror looking up the definition of the castle doctrine after the other jurors had already been discussing it and had submitted a question to the circuit court—was not so prejudicial as to warrant a new trial. Significantly, the castle doctrine was not at issue in the case, and the circuit court did not instruct the jury on the castle doctrine. M.F. told the circuit court she looked up the definition because other jurors were already discussing the doctrine and they wrote a question to the court about it. The other jurors stopped M.F. from reading the definition out loud, and the jurors, including M.F., reported the incident to the circuit court. In response, the court issued a curative instruction telling the jury that: the castle doctrine was a complex legal doctrine; the doctrine did not apply in this case; if the doctrine did apply, the jury would have received an instruction; and to not consider it further. The court then took all the jurors' cellular phones to ensure no one used them during deliberations.

¶28 These mitigating steps were entirely reasonable and appropriate for the situation. Jurors are presumed to have followed jury instructions. *State v. LaCount*, 2008 WI 59, ¶23, 310 Wis. 2d 85, 100, 750 N.W.2d 780, 788. Given the way in which the jurors contemporaneously advised the circuit court of the situation during deliberations and before they reached a verdict, we reject Johnson's contention that we can no longer assume the jurors in this case followed the instructions. The circuit court did not err by denying Johnson's motion for a mistrial.

¶29 Relatedly, Johnson also appears to challenge the curative instruction. In his appellate brief, he asserts the circuit court should have "explain[ed] what the Castle Doctrine means or what law does apply in the absence of the Castle Doctrine." Johnson contends that because the circuit court failed to do so, the castle doctrine "stood in the way" of the jury's consideration of self-defense.

¶30 We disagree. During trial, and after it became clear to Johnson that the circuit court was going to deny the motion for mistrial and issue a curative instruction, Johnson advised the court "I'm very uncomfortable with us, on the cuff, writing what is effectively a jury instruction relating to the castle doctrine by saying it doesn't apply and here's why." Johnson was also "uncomfortable with instructing [the jury] on what the castle doctrine means." After more discussion, Johnson advised that if the court was going to "create some type of curative instruction for what has occurred, I think the way to do it is to say the castle doctrine does not apply in this case. You are not to consider it, and please stop researching things on your cell phones." The circuit court's instruction tracked Johnson's request. The court did not err by failing to include in its curative instruction an explanation on what the castle doctrine means or why it did not apply in this case.

## II. Excluded evidence

¶31 Johnson next argues the circuit court erroneously exercised its discretion by excluding evidence of the images that Johnson found on K.M.'s computer. We review circuit court evidentiary determinations for an erroneous exercise of discretion. *Johnson I*, 397 Wis. 2d 633, ¶33. "[W]e examine whether 'the circuit court applied the proper legal standard to the relevant facts and reached a reasonable discretionary decision.'" *Id.*, ¶34 (citation omitted).

¶32 Johnson asserts the circuit court "erroneously determined, without reviewing the images themselves and contrary to the descriptions provided by those who had reviewed the images, that the images were not child pornography." Johnson also argues the circuit court "unreasonably concluded that introduction of

any evidence regarding the images would create a minitrial that would outweigh the evidence's probative value."

¶33    We disagree.  First, and contrary to Johnson's argument, the circuit court did not exclude the images because it determined they were not child pornography.  The circuit court observed the State had a basis to assert the images were not child pornography, and it did not want minitrials on whether the images were in fact child pornography.

¶34    As for Johnson's assertion that the circuit court erred by not specifically examining the images, the record reflects that in making its determination the circuit court reviewed the parties' briefs, the transcript from the previous motion hearing on this issue which included the detective's testimony as to the images that he examined, Johnson's expert's analysis of K.M.'s hard drive, and both our opinion and the supreme court's decision from *Johnson I*.  The circuit court also explicitly asked the parties whether there were any images of prepubescent children engaged in sexual activity.  When Johnson offered a table from his expert's report, the circuit court observed it did not appear Johnson accessed those images in that table on the night K.M. was killed.  This factual record was an entirely sufficient basis upon which the circuit court made its decision.  The circuit court was not required to view all the images to determine whether they constituted child pornography.

¶35    In any event, the record reflects the circuit court excluded the evidence on the ground that any probative value would be substantially

outweighed by the danger of unfair prejudice. *See* WIS. STAT. § 904.03.[1] Similar to the circuit court in ***Johnson I***, it is apparent that the circuit court was "concern[ed] that the introduction of this evidence could mislead the jury or cause them to focus on K.M.'s potential criminal behavior related to child pornography rather than the circumstances surrounding his death." *See **Johnson I***, 397 Wis. 2d 633, ¶35. The circuit court was also again "worried about a trial within a trial regarding whether certain pictures constituted child pornography or not, possibly distracting the jury from the real issues in the case." *See **id.*** Finally, "while Johnson was not permitted to present direct evidence of what he found on K.M.'s computer, Johnson did testify that he went to the house to look for child pornography and that he believed he found what the police needed." ***Id.*** The State was also prohibited from arguing to the jury that there was no evidence to corroborate Johnson's testimony. We conclude the circuit court's decision here was "a reasonable call within the bounds of the law." *See **id.***, ¶36.

### III. Provocation jury instruction

¶36 Finally, Johnson argues the circuit court erred when it instructed the jury on provocation. We begin by putting Johnson's argument into context.

¶37 In ***Johnson I***, Johnson argued the circuit court erred by failing to instruct the jury on perfect self-defense. ***Id.***, ¶20. Perfect self-defense is a privilege that is codified in WIS. STAT. § 939.48(1):

> A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

interference with his or her person by such other person. The actor may intentionally use only such force or threat thereof as the actor reasonably believes is necessary to prevent or terminate the interference. The actor may not intentionally use force which is intended or likely to cause death or great bodily harm unless the actor reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself.

¶38 As the court in *Johnson I* observed, "the privilege of self-defense may also be limited when the person claiming self-defense provoked the initial attack." *Johnson I*, 397 Wis. 2d 633, ¶26 n.13. WISCONSIN STAT. § 939.48(2) outlines how provocation affects the privilege of self-defense:

(a) A person who engages in unlawful conduct of a type likely to provoke others to attack him or her and thereby does provoke an attack is not entitled to claim the privilege of self-defense against such attack, except when the attack which ensues is of a type causing the person engaging in the unlawful conduct to reasonably believe that he or she is in imminent danger of death or great bodily harm. In such a case, the person engaging in the unlawful conduct is privileged to act in self-defense, but the person is not privileged to resort to the use of force intended or likely to cause death to the person's assailant unless the person reasonably believes he or she has exhausted every other reasonable means to escape from or otherwise avoid death or great bodily harm at the hands of his or her assailant.

….

(c) A person who provokes an attack, whether by lawful or unlawful conduct, with intent to use such an attack as an excuse to cause death or great bodily harm to his or her assailant is not entitled to claim the privilege of self-defense.

¶39 Here, Johnson requested an instruction on perfect self-defense. The State requested an instruction on provocation that included an optional pattern jury instruction paragraph:

A person who provokes an attack whether by lawful or unlawful conduct with intent to use such an attack as an excuse to cause death or great bodily harm to another

person is not entitled to use or threaten force in self-defense.

WIS JI—CRIMINAL 815 (2020); *see* WIS. STAT. § 939.48(2)(c).

¶40   On appeal, Johnson argues the circuit court erred by instructing the jury on this optional paragraph.  He asserts that because the optional paragraph includes an intent element ("intent to use such attack as an excuse to cause death or great bodily harm") and because he was acquitted of first-degree intentional homicide, second-degree intentional homicide, and burglary, the circuit court's instruction violated his right to be free from double jeopardy.

¶41   We disagree.  Johnson is not being put in jeopardy a second time. The Double Jeopardy Clause applies in three situations.  *State v. Henning*, 2004 WI 89, ¶16, 273 Wis. 2d 352, 681 N.W.2d 871.  "It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  *Id.* (citation omitted).  Here, Johnson was acquitted of first-degree intentional homicide, second-degree intentional homicide, and burglary.  The State did not try him a second time for those offenses.

¶42   On remand, and before his second trial, Johnson requested the following perfect self-defense instruction:

> The Criminal Code of Wisconsin provides that a person is privileged to intentionally use force against another for the purpose of preventing or terminating what he reasonably believes to be an unlawful interference with his person by the other person.  However, he may intentionally use only such force as he reasonably believes is necessary to prevent or terminate the interference.  He may not intentionally use force which is intended or likely to cause death unless he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself.

15

He also requested:

> Self-defense is an issue in this case. The law of self-defense allows the defendant to threaten or intentionally use force against another only if:
>
> - the defendant believed that there was an actual or imminent unlawful interference with the defendant's person; and
>
> - the defendant believed that the amount of force the defendant used or threatened to use was necessary to prevent or terminate the interference; and
>
> - the defendant's beliefs were reasonable.
>
> The defendant may intentionally use force which is intended or likely to cause death or great bodily harm only if the defendant reasonably believed that the force used was necessary to prevent imminent death or great bodily harm to himself.

The circuit court gave the instructions. Because Johnson put intent at issue through his perfect self-defense instruction, the circuit court did not err by including in the provocation instruction a paragraph that accurately reflected the law but referenced the word "intent."

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2021-22).