Antonio CASTANEDA, Jr., by his Guardian Ad Litem, John H. Correll, Antonio Castaneda, Sr., Sherry Castaneda and State of Wisconsin Department of Health and Social Services, Plaintiffs-Respondents,†

v.

Thomas E. PEDERSON, M.D. and St. Paul Fire & Marine Insurance Company, Defendants-Co-Appellants-Petitioners,

WISCONSIN PATIENTS COMPENSATION FUND, Defendant-Appellant-Petitioner.

Supreme Court

*No. 92–0149. Oral argument February 3, 1994.—Decided June 23, 1994.*

(Also reported in 518 N.W.2d 246.)

†Motion for reconsideration denied September 21, 1994. GESKE J., took no part.

For the defendant-appellant-petitioner and the defendants-co-appellants-petitioners there were briefs by *Judith P. Sullivan* and *Gutglass, Erickson & Bonville, S.C.,* Milwaukee and oral argument by *Judith P. Sullivan.*

For the plaintiffs-respondents there were briefs by *J. Michael End* and *Gray & End,* Milwaukee and oral argument by *J. Michael End.*

HEFFERNAN, CHIEF JUSTICE. This is a review of a published decision of the court of appeals, *Castaneda v. Pederson,* 176 Wis. 2d 457, 500 N.W.2d 703 (Ct. App. 1993), affirming a judgment of the Milwaukee County circuit court, Judge William J. Haese. The judgment was entered following a jury verdict awarding the plaintiffs, collectively referred to as "Castaneda," damages for Dr. Pederson's negligent treatment of Antonio Castaneda, Jr. The issue we address on review is whether Dr. Pederson is entitled to a new trial on the grounds that jurors were prejudiced by extraneous information. The information to which Dr. Pederson refers is a statistic on the average medical malpractice award, which juror Gloria Kopke obtained and shared during deliberations.

We conclude that the statistic Kopke obtained and shared was prejudicial to the determination of damages and the verdict as to damages must be reversed. We base our conclusion on a totality of factors. Because

the statistic pertained to medical malpractice damages, a material issue in the case, an average jury may have used the statistic as a bench mark even though the statistic was irrelevant to the determination of Castaneda's damages. Further, a precise statistic is not the common knowledge typically possessed by jurors. The statistic would have been inadmissible at trial but, because it was presented during deliberations, the parties could not challenge the statistic and the circuit court could not provide a curative instruction.

We further conclude that the information had no prejudicial effect on the jury's findings on negligence and causation. The statistic was entirely unrelated to either of these issues. Thus we reverse the court of appeals' decision in part and remand for a new trial solely on the issue of damages.

In this medical malpractice action Castaneda alleged that Dr. Pederson, an ophthalmologist, was negligent in failing to diagnose a brain tumor that was causing Castaneda's vision problems. Castaneda further alleged that Dr. Pederson's failure to diagnose the tumor caused Castaneda's already extremely limited vision to deteriorate to total blindness and that Castaneda subsequently fell down stairs and sustained further injury as a result of the blindness.

The case went to trial. On August 2, 1991, the court recessed for lunch after the defendant's closing argument, prior to the plaintiff's rebuttal closing argument. During the noon recess, juror Gloria Kopke went to the Milwaukee Public Library and found a publication entitled "Report of the Task Force on Medical Liability and Malpractice" that stated that the average medical malpractice award in 1985 was $1.5 million. She took notes on her research. During jury delibera-

tions, Kopke shared this information with the other jurors.

The special verdict form submitted to the jury required the jury to answer a series of questions. At the time that Kopke shared the information on average awards, the jury had already determined that Dr. Pederson was negligent and that the negligence caused Castaneda injury. The jury had already reached agreement on all but one of the damage awards. The court had set $49,787 as damages for Castaneda's past medical and hospital expenses and the jury had awarded Castaneda $300,000 for impairment of earning capacity and $750,000 for future care costs. The jury had awarded Castaneda's mother $150,000 for loss of society and companionship, and had awarded Castaneda's father nothing. The jury had only to set the damages for Castaneda's pain, suffering and disability. After Kopke's remarks, the jury awarded $750,000 for this category of damages. Two jurors, Baron and Thoreson, dissented to each determination in the special verdict.

After the verdict was delivered and the jury was dismissed, Dr. Pederson's counsel interviewed the dissenting jurors and learned of Kopke's conduct. Dr. Pederson filed a motion for a new trial. The circuit court denied the motion, concluding that the information Kopke gave the jury was equally prejudicial to Castaneda and Dr. Pederson. The court relied in part on the $750,000 award for pain, suffering and disability, concluding that the award was low.

The court of appeals affirmed. Noting that jurors are expected to bring commonly known facts and experiences into the jury room, the court concluded that the average citizen has a general awareness of jury verdicts and the information Kopke shared was little different than this general knowledge. *Castaneda,* 176

Wis. 2d at 467. The court of appeals also concluded that the information was not prejudicial to Dr. Pederson because the $750,000 award for pain, suffering and disability was low. *Id.* at 468.

Judge Schudson dissented. He explained that Kopke's research provided irrelevant information on damages, a central issue in the case. *Id.* at 478 (Schudson, J., dissenting). According to Judge Schudson, statistical information related to damages probably distracted the jurors from determining actual damages and was therefore prejudicial. Judge Schudson also asserted that the moving party need not show that the juror misconduct was more prejudicial to the moving party than to the non-moving party. *Id.* at 480. He added that the actual damages award was useless in determining prejudice in all but the most obvious cases. *Id.* at 481.

■

The methodology a circuit court must utilize to determine whether to overturn a verdict and grant a new trial because of juror misconduct is well established. The court must first determine whether the jurors are competent to testify in an inquiry into validity of the verdict, an evidentiary issue governed by sec. (Rule) 906.06(2), Stats.[1] *State v. Poh,* 116 Wis. 2d 510, 343 N.W.2d 108 (1984); *After Hour Welding, Inc. v.*

---

[1] Section (Rule) 906.06(2), Stats., provides in relevant part:

INQUIRY INTO VALIDITY OF VERDICT OR INDICTMENT. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or

*Laneil Management Co.,* 108 Wis. 2d 734, 738, 324 N.W.2d 686 (1982). That is, the court must determine whether the testimony of the jurors is admissible at the hearing on the motion for a new trial.

Section 906.06(2) prohibits jurors' testimony as to statements made during deliberations and as to the deliberative processes of the jurors, in order to promote verdict finality and maintain the integrity of the jury as a decision-making body. *State v. Shillcutt,* 119 Wis. 2d, 788, 793, 350 N.W.2d 686 (1984). To accommodate the sometimes competing policy of ensuring a fair trial and a just resolution of the issues, the statute provides an exception for testimony "on the question whether extraneous prejudicial information was improperly brought to the jury's attention." Section 906.06(2), Stats.; *Shillcutt,* 118 Wis. 2d at 794; *Poh,* 116 Wis. 2d at 517–18. The party seeking to impeach the verdict has the burden of proving that a juror's testimony is admissible by establishing "that the juror's testimony concerns extraneous information (rather than the deliberative processes of the jurors), that the extraneous information was improperly brought to the jury's attention, and that the extraneous information was potentially prejudicial." *Poh,* 116 Wis. 2d at 520.

We conclude that Dr. Pederson has met his three-part burden of proof and thus the juror's affidavits and statements as to the information shared by juror Kopke were admissible. First, the affidavits and statements concern extraneous information, which we have defined as that which is neither of record nor the "general knowledge" we expect jurors to possess. *Poh,* 116 Wis. 2d at 521. Kopke researched medical malpractice

whether any outside influence was improperly brought to bear upon any juror.

209

awards and informed the jury that the average medical malpractice claim paid in 1985 was $1.5 million. This statistic was not a part of the trial record—Kopke obtained the information through her own independent research. Furthermore, the information is a precise statistic rather than the general knowledge about damage awards that we expect jurors to possess.

■

Second, the extraneous statistic on average jury awards was improperly brought to the jury's attention. Kopke conducted the research and shared the information with the jury. Information not on the record is not properly before the jury. *Poh,* 116 Wis. 2d at 521–22.

■

Third, the extraneous statistic was potentially prejudicial. The level of prejudice needed under sec. 906.06(2), which governs when a juror may testify in an attempt to impeach a verdict, is necessarily lower than that needed to successfully impeach the verdict. *State v. Messelt,* 185 Wis. 2d 255, 277, 518 N.W.2d 232 (1994). *See also After Hour,* 108 Wis. 2d at 738–742 (after court determines that a juror's testimony regarding extraneous information is admissible at a postconviction hearing, it must determine whether the extraneous information probably would have a prejudicial effect on an average jury). For purposes of sec. 906.06(2), the statistic on average medical malpractice awards was potentially prejudicial because it related to the subject of damages, a material issue at the trial. A statistic on average damage awards was irrelevant to the determination of Castaneda's damages, but the jurors might have thought that they should use the average as a bench mark.

Castaneda claims that the sec. 906.06(2) exception, allowing juror testimony on extraneous prejudicial information "improperly brought to the *jury's* attention", applies only when that information is brought to the attention of all twelve jurors. In *Messelt,* 185 Wis. 2d 255, we reversed the court of appeals' decision on which Castaneda relies and concluded that, in criminal cases, testimony regarding extraneous prejudicial information is admissible even if only one juror possesses the information. We reach the same conclusion for civil trials. In *Messelt* we reasoned that a criminal defendant's constitutional right to a unanimous verdict by an impartial jury is impaired when even one juror is materially prejudiced. Civil litigants also have a right to trial by an impartial jury. That right is granted by statute. *See* sec. 805.08(1), Stats. (stating that a juror who is not indifferent shall be excused during voir dire). Material prejudice on the part of even one juror impairs that right. *After Hour Welding,* 108 Wis. 2d at 740.

Once a circuit court has determined that the jurors' testimony is admissible, the court must make an evidentiary determination and a legal determination. *After Hour Welding,* 108 Wis. 2d at 740–42; *Poh,* 116 Wis. 2d at 522–530. Although prior cases have set forth these two determinations in an overlapping fashion, the determinations can be separated. The circuit court must determine, by clear, satisfactory and convincing evidence, that one or more jurors made or heard the statements or engaged in the conduct alleged. *After Hour Welding,* 108 Wis. 2d at 742; *Poh,* 116 Wis. 2d at 523. If the evidence is clear, satisfactory and convincing, the court must then determine, as a

211

matter of law, whether the extraneous information constitutes prejudicial error requiring reversal of the verdict. *After Hour Welding,* 108 Wis. 2d at 741; *Poh,* 116 Wis. 2d at 524.

■

Dr. Pederson has met his evidentiary burden in this case. The evidence is uncontroverted and the circuit court's factual findings as to Kopke's actions are not in dispute. Juror Kopke set forth a description of her conduct in a signed statement attached to a sworn affidavit submitted by Castaneda's counsel. Dr. Pederson's counsel submitted an affidavit stating that she had spoken with Kopke and that she had obtained basically the same information. Both parties submitted either affidavits or written statements from the other jurors confirming the substance of Kopke's statement and indicating that all but two of the jurors heard Kopke present the information she had researched.[2]

■

Whether extraneous information is so prejudicial as to require reversal of the verdict is a question of law and the circuit court's determination is not accorded deferential review. *Poh,* 116 Wis. 2d at 523 (citing *After Hour Welding,* 108 Wis. 2d at 741). We will reverse the verdict in a civil case on grounds of prejudice if there is a reasonable probability that the error would have a prejudicial effect upon a hypothetical average jury. *After Hour Welding,* 108 Wis. 2d at 741; *Poh,* 116 Wis. 2d at 525.

■

In determining the probable effect on an average jury we consider factors such as the nature of the extra-

---

[2] The written statements were signed by the jurors, as witnessed by the attorneys, and attached to affidavits of the attorneys.

212

neous information, the circumstances under which it was brought to the jury's attention, the nature of the plaintiff's case and the defense, and the connection between the extraneous information and a material issue in the case. *Poh,* 116 Wis. 2d at 530; *After Hours,* 108 Wis. 2d at 742. Considering these factors in totality, we conclude that there is a reasonable probability that the information Kopke shared would have a prejudicial effect on an average jury considering the issue of damages.

The extent of damages was a material issue in Castaneda's case. At trial, two expert witnesses testified for Castaneda solely as to his lost earning capacity and future care costs. A medical doctor practicing in physical medicine and rehabilitation evaluated Castaneda's employment prospects at his present level of disability. The doctor then compared these prospects to the future employment prospects Castaneda faced at the time Dr. Pederson treated him. This witness also discussed the type of structured living arrangement that Castaneda would need as an adult, as well as the cost of such an arrangement. An economist testified as to the present value of the estimated loss of earnings and the present value of the cost of structured living arrangements over Castaneda's estimated life span. In addition, testimony regarding the nature and extent of Castaneda's injuries was presented at least in part to assist the jury in determining damages for pain, suffering and disability.

The statistic on the average payment for medical malpractice awards, that Kopke shared with the jury, was irrelevant to the determination of Castaneda's damages. *See* sec. (rule) 904.01, Stats. (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the evidence.") A statistic on average awards does not help a jury determine the actual damages in the case before it. Damages in an individual case will vary widely from the statistical average. Because this statistic was irrelevant, it would have been inadmissible at trial. *See* sec. (rule) 904.02, Stats. ("Evidence which is not relevant is inadmissible").

Although it was irrelevant to the determination of Castaneda's damages, the statistic pertained to the subject matter of damages for medical malpractice. Because the statistic dealt with an issue that the jury was deciding in the case, we conclude that an average jury that heard the statistic might have believed it needed to take the statistical information into account in establishing Castaneda's damages. An average jury may have considered the $1.5 million average payment to be a bench mark and concluded that its damage award should be reasonably close to the statistical average.

As we stated in the discussion on admissibility of the jurors' testimony, a precise statistic is not the type of common knowledge that we expect jurors to bring to deliberations. Although Castaneda references numerous newspaper articles discussing damage awards, these articles report single damage awards in a variety of individual cases. While we might expect jurors to be aware that juries have awarded a broad range of damages in different cases, we do not expect that jurors are commonly aware of statistical averages with respect to damages.

The circumstances in which Kopke presented the statistical information to the jury increased the likelihood that the information would have a prejudicial

effect on the average jury. A statistic pertaining to a material issue, damages, was presented to the jury while they were deliberating on that very issue. The special verdict asked the jury to make several damages findings. The court set the figure for past medical and hospital expenses and provided this figure to the jury. The court asked the jury to set damages to compensate Castaneda for pain, suffering and disability, impairment of earning capacity and future care costs. The court also asked the jury to set damages to compensate Castaneda's parents for the loss of their son's society and companionship. At the time Kopke shared the statistic, the jury had decided on damages for each category except pain, suffering and disability, a category not easily quantifiable. A statistic on average awards would likely have its greatest impact on an average jury when the jury is setting damages in categories that cannot be determined with precision.

The presentation of this extraneous statistic during deliberations was problematic for an additional reason. Because the statistic was not presented during trial, neither Castaneda nor Dr. Pederson could challenge its admissibility or attempt to rebut it. The circuit court judge could not provide a curative instruction stating that the jurors should not consider the information.

In summary, our conclusion, that there is a reasonable probability the statistic Kopke shared would have a prejudicial effect on an average jury, is based on the totality of the factors discussed. The statistic was irrelevant to establishing damages, a material issue in the case. Nonetheless, the statistic pertained to average medical malpractice awards and the jury might have used it as a bench mark. The statistic is not the type of

215

common knowledge we expect jurors to bring to deliberations. Further, the jury learned of the statistic at the point that it was setting damages in a category not easily quantifiable—pain, suffering and disability. Neither the parties nor the court had an opportunity to challenge the statistic or state that it should be ignored.

Both the circuit court and the court of appeals concluded that Kopke's conduct was not prejudicial error requiring a new trial. Both courts reasoned that information on a statistical average could have biased the jury against either Dr. Pederson or Castaneda. Both courts then concluded that because the jury's damage award on pain, suffering and disability was low, the statistical information was likely more prejudicial to Castaneda.

We disagree with the analysis of these courts and conclude that when a court makes the legal determination that the extraneous information probably would have a prejudicial effect on an average jury, the verdict must be overturned even when the information could be prejudicial to either party. The circumstances in which information could be prejudicial to either party are relatively rare. More typically, extraneous information is prejudicial to only one party, as was the information on the *Poh* defendant's prior record. *See Poh,* 116 Wis. 2d at 524. Information on a statistical average is somewhat unique because it can be used as a bench mark and thus has the potential to be prejudicial to either party. If a jury considers damages to be low on the basis of the evidence, information on average awards could induce the jury to increase the damage award. If a jury considers damages to be high on the basis of the evidence, information on statistical aver-

216

ages could induce the jury to decrease the damage award. When the prejudice could accrue to either party, a court need not determine that the moving party suffers greater prejudice. Both parties are entitled to an impartial jury.

We also conclude that, in the present case, a determination of whether the information was prejudicial could not be based on the actual damage award. Because jurors' testimony regarding their mental processes during deliberations is inadmissible under sec. 906.06(2), courts rarely have direct evidence of the effect of prejudicial information. *See After Hour Welding,* 108 Wis. 2d at 741. The restrictions on admissibility of juror testimony in sec. 906.06(2) barred the jurors in the present case from testifying as to whether the statistic affected their deliberations.

The circuit court and court of appeals' conclusion that the error did not prejudice Dr. Pederson was based on the courts' own perception that the award for pain, suffering and disability was low. However, damages for pain, suffering and disability are difficult to determine with precision. Except in the most obvious cases wherein the damage award is grossly inconsistent with the evidence presented at trial, a finding of prejudice cannot be based on the actual damage award. Although the circuit court and court of appeals each concluded that the damage award for Castaneda's pain, suffering and disability was low, neither court stated it was grossly inconsistent with the evidence. Nor can we so conclude. Castaneda is now totally blind, but he was already legally blind at the time Dr. Pederson treated him. Castaneda also sustained injuries when he fell after his vision deteriorated further. Without conclud-

217

ing whether the $750,000 was low, we cannot say it was grossly inconsistent with the evidence.

We further conclude that the information Kopke researched and shared was prejudicial only in regard to the issue of damages. The information was not prejudicial in regard to the issues of negligence and causation. The jury provided its findings in the form of a special verdict containing separate questions on the issues of negligence, causation and damages. The information Kopke discussed was not prejudicial personal information about a party that could taint the entire verdict. The information was purely statistical. Because the statistic related solely to damages, we conclude that there is not a reasonable probability the information would have a prejudicial effect on an average jury's findings regarding negligence and causation.

Dr. Pederson asks us to reverse the entire verdict on the grounds that the verdict was not reached by a 5/6 vote. A verdict agreed to by 5/6 of the jury in a civil case is the verdict of the jury. Section 805.09(2), Stats. Dr. Pederson claims that by conducting independent research prior to the close of the case and sharing a statistic with the jury, Kopke was demonstrating bias towards Castaneda and thus was not impartial. Dr. Pederson asserts that had Kopke's conduct been discovered prior to the end of deliberations, she would have been struck from the panel. In the absence of Kopke's vote, the verdict is not supported by a 5/6 vote because two jurors dissented to the jury's answer to each question on the special verdict.

We consider juror Kopke's conduct inappropriate. However, we do not have adequate evidence on which to base a conclusion that she was not impartial. Section

218

906.06(2) bars jurors' testimony as to their mental processes. The sec. 906.06(2) bar is designed to protect trial by jury and promote the finality of verdicts. *Poh,* 116 Wis. 2d at 517. Thus, the only evidence to support the assertion that Kopke was not impartial is the evidence we have already set forth—that she researched medical malpractice damages awards during a break prior to the plaintiff's rebuttal closing argument and shared the information during deliberations on damages. We have already determined the extent of the prejudicial effect of Kopke's conduct and concluded that a new trial is necessary on damages. We have no grounds on which to base a conclusion that Kopke was not impartial in determining the issues of negligence and causation.

We affirm the court of appeals in part—the verdict on negligence and causation stands. We reverse the court of appeals in part and remand for a new trial solely on the issue of damages.

*By the Court.*—Affirmed in part, reversed in part, and remanded with instructions.

Justice JANINE P. GESKE took no part in this decision.