STATE of Wisconsin, Plaintiff-Appellant,†

v.

Wang Meng YANG, Defendant-Respondent.

Court of Appeals

*No. 94–2031–CR. Submitted on briefs June 1, 1995.—Decided August 9, 1995.*

(Also reported in 538 N.W.2d 817.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Thomas L. Storm*, District Attorney.

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Thomas A. Wilson* and *Rachel K. Mathison* of *Bachman, Cummings, McKenzie, McIntyre & Wilson, S.C.* of Appleton.

Before Anderson, P.J., Brown and Nettesheim, JJ.

ANDERSON, P.J.   The State appeals from a circuit court order granting Wang Meng Yang's motion for a new trial on his conviction of false imprisonment. Because we conclude that the extraneous prejudicial information obtained by a jury member warrants a new trial, we affirm.

Yang was charged with second-degree sexual assault contrary to § 940.225(2), STATS., and false imprisonment contrary to § 940.30, STATS. The alleged assault occurred at the Asian American Quilt & Craft Shop where Yang was employed. According to the criminal complaint, Yang sexually assaulted Chue V., a store employee, in a back room. Chue V. first contacted police officers about a week after the incident but only

claimed that all Yang did was grab her around the waist. Three weeks later, Chue V. told police that a sexual assault occurred. This inconsistency was a focal point in Yang's defensive posture.

At the conclusion of the trial, the jury was sent out for deliberations. They deliberated into the evening and then were excused until the following day. Officer Steve Endries was dispatched to escort the jurors to their cars. Endries was the chief investigating officer on the case and was a witness for the prosecution. He was present in court, seated at the district attorney's table, during the course of the trial.

An evidentiary hearing was held pursuant to Yang's motion for a new trial. Here, one of the jurors, Norine Haeft, testified that as she and several other jurors were being escorted to their cars they were talking about interpreters in general. During the trial, Chue V. had used an interpreter. Haeft asked Endries the following question: "Officer, do you have a list, you know, of interpreters who you call?" Haeft stated that Endries told her, "We try to call an interpreter, and if we can't, we do the best we can." Haeft specifically was questioned as follows:

> Q. So there were two or three of the members of the jury that were either talking or listening to the conversation?
> A. Uh-huh.
> Q. You have to say yes or no.
> A. Yes.

Haeft further testified that when she asked Endries if he used an interpreter during the investigation, his response was, "We can't talk about that." When asked if she conveyed this information to the rest of the jury the next day, Haeft testified: "I know there was a ques-

tion about it the next day, and I says, "They try to get an interpreter, and if they can't, they do the best they can," something like that."

The jury acquitted Yang on the sexual assault charge and found him guilty on the charge of false imprisonment. Yang's motion for a new trial alleged that the jury considered extraneous information in convicting him. After the evidentiary hearing, the trial court granted a new trial as a result of the extraneous material improperly brought to the attention of the jury and its prejudicial nature. It was subsequently determined that Yang would only be retried on the charge of false imprisonment. The State appeals from the trial court's order granting a new trial.

The decision to grant a new trial is within the trial court's discretion and will not be overturned absent an erroneous exercise of that discretion. *State v. Eison*, 194 Wis. 2d 160, 171, 533 N.W.2d 738, 742 (1995). We will affirm the trial court's decision if the record shows that the court considered the facts of the case and arrived at a conclusion consistent with applicable law. *Id.* However, the prejudice to Yang is a question of law which we decide independently of the trial court. *See id.* at 178, 533 N.W.2d at 745.

In deciding whether to grant a new trial, a trial court must initially determine whether the juror was competent to testify in an inquiry into the validity of the verdict. *Castaneda v. Pederson*, 185 Wis. 2d 199, 208, 518 N.W.2d 246, 249-50 (1994). Section 906.06(2), STATS., governs the admissibility of statements made by a juror or matters arising during jury deliberations:

INQUIRY INTO VALIDITY OF VERDICT OR INDICTMENT. Upon an inquiry into the validity of a verdict or

365

indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may the juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received.

■ The party seeking to impeach the verdict has the burden of proving that a juror's testimony is admissible under § 906.06(2), Stats., by establishing (1) that the juror's testimony concerns extraneous information, (2) that the extraneous information was improperly brought to the jury's attention, and (3) that the extraneous information was potentially prejudicial. *Castaneda*, 185 Wis. 2d at 209, 518 N.W.2d at 250. "After the circuit court determines whether the party has satisfied sec. 906.06(2), it determines whether one or more jurors engaged in the alleged conduct and whether the error was prejudicial." *Eison*, 194 Wis. 2d at 172-73, 533 N.W.2d at 743.

■ We conclude that Haeft's testimony concerns extraneous information that was improperly brought to the jury's attention. "Extraneous information" is defined as information which is neither of record nor the general knowledge that jurors are expected to possess. *Castaneda*, 185 Wis. 2d at 209, 518 N.W.2d at

366

250. The conversation between Endries and Haeft regarding police procedures involving interpreters gave the jury information which was not of the general knowledge which a jury is expected to possess. Additionally, the information received by Haeft, which she recommunicated to the rest of the jury, had not been testified to at trial. "Information not on the record is not properly before the jury." *Id.* at 210, 518 N.W.2d at 250. Therefore, the conversation constituted extraneous information improperly brought before the jury.

■ The extraneous information was potentially prejudicial for purposes of determining competency under § 906.06(2), STATS. Haeft's conversation with Endries conceivably related to the issue of police procedures during the investigation of the case and the accuracy of Chue V.'s prior statements. The jury could well have decided to discount Chue V.'s inconsistent statements in the belief that the inconsistencies were due to the lack of a qualified interpreter rather than a conscious effort by the victim to change her story. We conclude, therefore, that the testimonies of Endries and Haeft constitute competent testimony admissible under § 906.06(2).

■ We conclude that there was clear, satisfactory and convincing evidence that Haeft engaged in the extrajudicial conversation with Endries. *See Eison*, 194 Wis. 2d at 177, 533 N.W.2d at 744. We further conclude that the extraneous information was prejudicial to Yang. Endries was a key witness for the prosecution and the chief investigating officer on the case. The fact that he escorted the jurors to their cars while carrying on a

conversation with them is, by itself, suspect.[1] The conversation, however, dealt with police investigatory procedure and communication with non-English speaking people. We agree with Yang that "the validity and accuracy of the English language statements taken from Chue V. would be in considerable doubt simply because of her communication difficulties."

The State argues that it is speculative to suggest that the extraneous information received by Haeft would have been prejudicial against Yang. However, the conclusions that could be drawn by Haeft from the extraneous information, coupled with the compromising situation of the investigating officer on the case conversing with a juror during deliberations, raise a reasonable possibility that the conversation would have had a prejudicial effect upon a hypothetical average jury. *See Eison,* 194 Wis. 2d at 177, 533 N.W.2d at 745. The trial court was warranted in granting a new trial.

We also conclude that the trial court conducted a reasonably exhaustive fact-finding hearing. At the December 16, 1993 hearing, Yang called Endries and Haeft and offered the partial transcript of Endries' testimony during the trial. The testimony elicited was sufficient to establish the possibility of prejudice.

---

[1] Trial courts should not permit an officer to serve as a bailiff who has investigated the underlying crime in a case. Once a bailiff is sworn, it is imperative that he or she be the only officer having contact with the jurors until the jury has reached a verdict or is discharged by the court. *See* §§ 756.098(2) and 972.12, STATS.

*By the Court.*—Order affirmed.