Bernice Hart Stringer was driving in the far right lane on a four-lane road in Houston County on September 19, 1992. She attempted to make a left turn from that far right lane, and in doing so crossed the lane of traffic that was traveling in the same direction as she was. A van being driven by Richard D. Arthur was in that lane, and Stringer's vehicle turned into Arthur's vehicle. The resulting collision caused injuries to Richard Arthur, the driver, and to his daughter, Ashley Arthur, who was riding in the backseat. Stringer admitted that her negligence caused the accident, and the jury was so instructed.
Richard's only injuries were bruises, which healed completely in the weeks following the accident. Ashley, however, testified at trial that when she saw that the van in which she was a passenger was going to be hit by Stringer's car, she threw out her right arm to shield another passenger. Ashley complains of continuing pain and a lack of the range of motion in her right arm and shoulder, of pain in her neck, and of severe migraine headaches that she says impair her vision and confine her to bed.
Four days after the accident, Ashley visited Dr. J. Paul Maddox in Dothan, complaining of severe pain in her right shoulder and arm and in her neck. Dr. Maddox prescribed physical therapy, including heat packs, ultrasound and electrical muscle stimulation, exercises, and anti-inflammatory medication. Several months later, Ashley returned to Dr. Maddox with similar complaints, and also complaining that her migraine headaches were becoming more frequent. Dr. Maddox suggested additional exercise for her shoulder and arm and sent Ashley back to physical therapy.
Ashley currently lives in Tuscaloosa, where she attends the University of *Page 983 
Alabama. Dr. Wayne Rhodes, a chiropractor who has been licensed for over 13 years, treats Ashley there. He testified at trial that he had reviewed Ashley's MRIs, Dr. Maddox's notes, the physical therapist's notes, and his own treatment of Ashley, and that he had concluded that Ashley suffers from degenerative arthritis from a disc injury. He also testified that there is nothing in Ashley's medical history or records, other than the 1992 automobile accident, that would have caused her condition.
Trial testimony indicated that Richard had medical expenses of $500, and that as of the trial in 2000 Ashley's medical expenses were $6,916.75. After jury deliberations, the jury awarded Richard $500 and awarded Ashley $1,800. The Arthurs sought a new trial, arguing that the jury was improperly influenced by extraneous information one of the jurors had brought into its deliberations.
At the hearing on the motion for a new trial, Ashley and Richard submitted an affidavit of Collen Boyette, one of the jurors.[1] The affidavit stated that "one of the jurors brought in outside medical research that he had done overnight concerning the injuries and possible causes for those injuries from which the girl, Ashley Arthur, had been suffering." Boyette also stated that the juror who had conducted the research "was agreeable to paying all the medical bills" before he did the research, but that afterward, "he agreed with the position that the medical bills should not be paid." At the hearing, Boyette affirmed the statements she had made in her affidavit.
The jury foreperson testified at the hearing that one of the jurors, "to [his] recollection, said that he had gone back . . . and looked at some medical journals that he had, `cause he worked in a doctor's office, or something like that, and had confirmed that migraine headaches were not just caused by accident impacts." After the hearing, the trial court denied the motion for a new trial.
The Court of Civil Appeals affirmed the trial court's judgment, without an opinion. (No. 2991062, June 22, 2001) ___ So.2d ___ (Ala.Civ.App. 2001) (table). This Court granted certiorari review to address the issue whether the alleged introduction to, and consideration by, the jury of extraneous facts by a member of the jury during jury deliberations was prejudicial and requires a new trial, and also to consider whether a verdict less than the amount of the claimed expenses should be overturned as inadequate. The Arthurs do not contest the jury's verdict for Richard Arthur or the award of damages for his injuries. We therefore affirm the judgment based on the jury verdict in favor of Richard Arthur in the amount of $500, and we consider the Arthurs' arguments on appeal only as they apply to the jury's consideration of Ashley Arthur's claims.
Ashley and Richard argue that the jurors improperly considered extraneous facts.[2] Extraneous facts introduced in jury deliberations can result in actual prejudice or in prejudice as a matter of law, also called presumed prejudice. See *Page 984 Pearson v. Fomby, 688 So.2d 239 (Ala. 1997).[3] In Ex parte Apicella,809 So.2d 865, 870-72 (Ala. 2001), this Court reviewed the development of Alabama's presumed-prejudice law.
 "Apicella . . . argues that we should hold the extraneous material introduced through S.B.'s conversation with T.R. to be prejudicial as a matter of law. Apicella supports this argument with the following language from Knight[v. State], 710 So.2d [511,] 517 [(Ala.Crim.App. 1997)]:
 "`"Juror misconduct will justify a new trial . . . when from the extraneous facts prejudice may be presumed as a matter of law." Whitten v. Allstate Ins. Co., 447 So.2d 655, 658 (Ala. 1984). . . . [I]n some cases, "the 655, 658 (Ala. 1984). . . [I]n some cases, "the character and nature of the extraneous material [constitute] prejudice as a matter of law and no showing that the jury was in fact influenced thereby in arriving at their verdict is necessary." Id. (prejudice presumed as a matter of law from jury's consulting encyclopedia and dictionary definitions . . .).'
 "(Quoting Minshew v. State, 594 So.2d 703, 716
(Ala.Crim.App. 1991)).
 "On the other hand, we have also held that `mere exposure to [a] definition does not require a new trial as a matter of law.' Pearson v. Fomby, 688 So.2d 239, 245 (Ala. 1997). Our holding in Pearson serves to emphasize the limitations of the doctrine of `prejudice as a matter of law.'
 "Generally, a presumption of prejudice applies only in a case in which the jury's consideration of the extraneous material was `"crucial in resolving a key material issue in the case."' Dawson v. State, 710 So.2d 472, 475 (Ala. 1997) (citing Hallmark v. Allison, 451 So.2d 270, 271 (Ala. 1984), and Ex parte Thomas, 666 So.2d 855 (Ala. 1995)).
 ". . . This case is distinguishable from cases such as Nichols v. Seaboard Coastline Railway, 341 So.2d 671
(Ala. 1976) (prejudice found as a matter of law where juror brought definitions into the jury room during deliberations and copied them onto a chalkboard)."
Ex parte Apicella, 809 So.2d 865, 871-72. (Ala. 2001).
To establish their claim of presumed prejudice, the Arthurs must prove that, as a matter of law, "consideration of the extraneous facts was crucial in resolving a key material issue in the case," such that it should be presumed to have prejudiced the jury. Hallmark v. Allison,451 So.2d 270, 271 (Ala. 1984). The extraneous information in this case goes to the cause of Ashley Arthur's migraine headaches, and the answer to that question may have determined the measure of damages for which Bernice Stringer was liable to Ashley.
The juror who performed the research was a nurse-practitioner student at the time of this trial. He went home after jury deliberations ended for the day and looked in medical textbooks for the possible causes of migraine headaches, so that he could compare this information with the evidence presented at trial. He returned to jury deliberations the next day and told the other jurors that his medical research had revealed that migraine headaches are caused not only by accident impacts, but also by other means and through other *Page 985 
causes. The jurors then discussed some of the other causes of migraine headaches.
The Wisconsin Supreme Court addressed a similar situation in Castanedav. Pederson, 185 Wis.2d 199, 212-17, 518 N.W.2d 246, 251-53 (1994). InCastaneda, a medical-malpractice case, when the jury was dismissed from deliberations for the evening, one of the jurors went to the library and researched the question of damages for medical malpractice. She returned to the jury the next day and informed the other jurors that she had found a statistic that the average medical-malpractice-damages award in Wisconsin was $1.5 million. The state Supreme Court reversed the judgment based on the jury's verdict and remanded the case for a new trial, stating:
 "Whether extraneous information is so prejudicial as to require reversal of the verdict is a question of law and the circuit court's determination is not accorded deferential review. We will reverse the verdict in a civil case on grounds of prejudice if there is a reasonable probability that the error would have a prejudicial effect upon a hypothetical average jury.
 "In determining the probable effect on an average jury we consider factors such as the nature of the extraneous information, the circumstances under which it was brought to the jury's attention, the nature of the plaintiff's case and the defense, and the connection between the extraneous information and a material issue in the case. . . .
 "The extent of damages was a material issue in Castaneda's case. . . . [T]estimony regarding the nature and extent of Castaneda's injuries was presented at least in part to assist the jury in determining damages for pain, suffering and disability.
". . . .
 "In summary, our conclusion, that there is a reasonable probability the statistic [the juror] shared would have a prejudicial effect on an average jury, is based on the totality of the factors discussed. The statistic was irrelevant to establishing damages, a material issue in the case. Nonetheless, the statistic pertained to average medical malpractice awards and the jury might have used it as a bench mark. The statistic is not the type of common knowledge we expect jurors to bring to deliberations. Further, the jury learned of the statistic at the point that it was setting damages in a category not easily quantifiable — pain, suffering and disability. Neither the parties nor the court had an opportunity to challenge the statistic or state that it should be ignored."
185 Wis.2d at 212-16, 518 N.W.2d at 251-53 (citations omitted).
The extraneous information about possible causes of migraine headaches found in a medical textbook is "not the type of common knowledge we expect jurors to bring to deliberations," 185 Wis.2d at 215-216,518 N.W.2d at 253, and it "was crucial in resolving a key material issue in the case," Hallmark, 451 So.2d at 271, namely, the damages to which Ashley was entitled. "Further, the jury learned of the [information] at the point that it was setting damages. . . . Neither the parties nor the court had an opportunity to challenge the [information] or state that it should be ignored." 185 Wis.2d at 216, 518 N.W.2d at 253. The medical information is the same type of authoritative information as is a dictionary definition of a legal term that is central to the case, or a specific statistic about average medical-malpractice damages in a medical-malpractice case, and it has a high probability of influencing jurors' beliefs on scientific issues. We, therefore, hold that under the facts of this *Page 986 
case, the extraneous information brought in by the juror and pertaining to what may well have been the principal issue in the case — whether the car accident caused Ashley's migraine headaches — was prejudicial as a matter of law. See Apicella, supra, and Castaneda, supra.
Because we hold that the decision of Stringer's liability as to Ashley Arthur was presumed prejudiced by the extraneous information offered during deliberations by one of the jurors, we pretermit discussion of the adequacy of the damages award for Ashley. Because the introduction of extraneous information in the jury deliberations was prejudicial as a matter of law, the trial court erred in failing to grant a new trial on Ashley Arthur's claims. Accordingly, we reverse the judgment for Ashley Arthur and remand this case for a new trial as to Ashley Arthur's claims. The judgment for Richard Arthur is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Moore, C.J., and Houston, Lyons, Brown, Johnstone, Harwood, and Stuart, JJ., concur.
Woodall, J., dissents.
[1] "Generally, affidavits are inadmissible to impeach a jury's verdict[; however, an] affidavit showing that extraneous facts influenced the jury's deliberations is admissible." Sharrief v. Gerlach,798 So.2d 646, 652 (Ala. 2001) (quoting HealthTrust, Inc. v. Cantrell,689 So.2d 822, 828 (Ala. 1997)).
[2] An extraneous fact is one "obtained by the jury or introduced to it by some process outside the scope of the trial." Sharrief v. Gerlach,798 So.2d 646, 653 (Ala. 2001).
[3] Rule 39(d)(3), Ala.R.App.P., requires that the petition contain a "concise statement of the grounds, 39(a)(1)(A)-(E), supra, on which the petition is based." In their brief, Ashley and Richard argue that the juror misconduct resulted in both actual and presumed prejudice, but in their petition they raise only presumed prejudice. We, therefore, address only that issue.