THOMAS, Judge.
 

 Jason E. Magee appeals from an order of the Mobile Circuit Court granting a new trial to Donyale Williams and Roney Williams in their action against him in which they asserted claims of negligence, wantonness, and loss of consortium. We reverse.
 

 On January 28, 2006, Magee attended the Senior Bowl football game at Ladd-Peebles Stadium in Mobile. Donyale Williams was attending a family reunion and tailgating party in the parking lot of the stadium during the game. The evidence was undisputed that the parking lot was filled with tents, campers, recreational vehicles, and hundreds of people who were tailgating. Magee left the game at halftime, located his vehicle, and began to drive out of the parking lot, which was crowded with pedestrians.
 

 
 *689
 
 Magee testified that he inched his way through the crowd, looking out right and left for pedestrians. He stated that he kept his foot on the brake and gradually rolled forward at approximately three or four miles per hour as the crowd moved away and allowed ears to pass. Magee said that, suddenly, someone hit the hood of his car and said, “You are on her foot; back up.” Magee testified that he did not hear a thump or feel a bump. He backed up, exited his vehicle, and saw Donyale Williams sitting on the asphalt with her legs stretched out in front of her. Shortly thereafter, a Mobile police officer arrived on the scene, took statements from several witnesses, and asked Magee if he had been drinking. Magee stated that he had not been drinking, and he agreed to take a Breathalyzer test to determine his blood-alcohol level. That test indicated that Ma-gee had no alcohol in his system.
 

 Donyale Williams testified that, at the time of the incident, she had her back to Magee’s vehicle and did not see it approaching, but a friend who was standing next to her warned her of the oncoming vehicle and jerked her out of the path of the car. Williams stated that her friend pulled her off balance as the front passenger-side tire of Magee’s vehicle ran over her foot.
 

 On September 15, 2006, Donyale Williams sued Magee, alleging claims of negligence and wantonness; Donyale’s husband Roney alleged a loss-of-consortium claim. Magee answered and asserted the defense of contributory negligence. The case was tried to a jury, which rendered a verdict in favor of Magee on January 16, 2008.
 

 On January 22, 2008, the Williamses moved for a new trial, alleging that one of the jurors had engaged in misconduct by reading to the other jurors portions of the Alabama Safety Institute Driver Education Course Manual (hereinafter referred to as “the manual”) dealing with the duties of drivers and pedestrians to each other. In support of their motion, the Williamses submitted the following affidavit:
 
 [1]
 

 “My name is Patricia McWilliams Baldwin. I reside at 5512 William and Mary Street, Mobile, Alabama 36608, I am over the age of nineteen, and I have personal knowledge of the matters stated in this Affidavit.
 

 “On January 16, 2008, I served on a jury in the case of Donyale Williams and Roney Williams v. Jason Magee, Circuit Court of Mobile County, Alabama, Civil Action No. CV-06-4076. During the course of jury deliberations, I showed my fellow jurors the Alabama Safety Institute Driver Education Course Manual, a copy of which is attached hereto. In particular, I showed a juror page 19 of the Driver Education Course Manual, which deals with pedestrians and I read aloud to the other jurors the portions of page 19 of the Driver Education Course [Manual] which are marked in pencil on page 19, attached hereto.
 

 “After the jury returned its verdict, I spoke with [the Williamses’] attorney Andrew T. Citrin in the hallway outside of Judge Lockett’s courtroom. When Mr. Citrin asked me how we the jurors felt about the case, I retrieved the Driver Education Course [Mjanual from my school bag and showed him page 19 and
 
 *690
 
 told him that I had read those provisions to the jury during deliberations. At that time, Mr. Citrin advised me that he had to report this incident to the judge and asked to keep my Driver Education Course [Mjanual. He then went and found the court administrator, Nancy Cowart, and I explained the above to her as well. Mr. Citrin then placed a Court Exhibit No. 1 sticker on the manual, and I signed it in the presence of Mr. Citrin, Mr. Savarese [Mr. Citrin’s cocounsel], and Ms. Cowart.”
 

 The Williamses also submitted the manual, with portions underlined or circled in pencil. We have indicated with emphasis those portions of the manual that were marked in pencil. The manual states:
 

 “PEDESTRIANS
 

 “When automobiles became popular as a means of traveling from one place to another, a problem arose as pedestrians and motor vehicles had to share the same roadways. There have been numbers of pedestrians killed or injured in collisions with vehicles. These numbers could be greatly reduced if motorists were more observant of pedestrian rights.
 

 “Be especially alert for pedestrians:
 

 • On streets on which cars are parked.
 

 • During the hours of darkness or poor visibility.
 

 • At places where people cross — near mailboxes, institutions, churches, play areas, bus stops, etc.
 

 • During morning and afternoon when children are going to and from school or at play.
 

 • Be especially alert for older people who move slowly and cannot see or hear well.
 

 “At sometime or another, every driver is a pedestrian and the traffic laws are written for both driver and pedestrian.
 

 “DRIVERS MUST:
 

 • Yield the right of way to pedestrians.
 

 • Not pass (overtake) another vehicle stopped for pedestrians in a crosswalk.
 

 • Stop for school children and school safety patrols directing the movement of children.
 

 • Yield to blind pedestrians carrying a white or metallic cane, with or without a red tip, or using a guide dog when such blind person enters an intersection of any street, alley or other public highway.
 

 • Not block crosswalks when at a stop sign or waiting on a red light.
 

 • Stop for a school bus displaying an extended stop arm.
 

 •
 
 Exercise extreme care to avoid hitting a pedestrian.
 

 “PEDESTRIANS MUST:
 

 • Obey traffic control signals at intersections.
 

 •
 
 Use sidewalks where provided and usable.
 

 • Walk on the left side of the roadway giving way to oncoming traffic.
 

 • Yield to all vehicles when crossing at points other than within a marked crosswalk or in a crosswalk (extension of the sidewalk) at an intersection.
 

 •
 
 Not stand in the roadway while hitchhiking.
 

 “SAFETY RULES FOR PEDESTRIANS
 

 • When walking on a roadway, stay as near to the left side as possible and in single file.
 

 • During the hours of darkness or poor visibility, carry a light or wear clothing trimmed with reflective materials. Since all clothing is not trimmed with reflective materials, it is a good rule always to wear light-colored clothing.
 

 
 *691
 
 • Through vehicles are required to yield to you in intersections and cross safety-
 

 • Be aware of a driver’s difficulty in stopping quickly when streets are slip'pery and when visibility is poor.
 

 •
 
 Be sure that the driver sees you. Be sure that you’ve made eye contact before you proceed.”
 

 Magee submitted a brief in opposition to the Williamses’ motion. Following a hearing, at which the circuit court heard legal arguments and no testimony was elicited, the court granted the motion for new trial on February 29, 2008. Magee filed a timely notice of appeal to the Alabama Supreme Court on March 14, 2008. The supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
 

 Standard of Revieiu
 

 “ ‘It is well established that a ruling on a motion for a new trial rests within the sound discretion of the trial judge. The exercise of that discretion carries with it a presumption of correctness, which will not be disturbed by this Court unless some legal right is abused and the record plainly and palpably shows the trial judge to be in error.’”
 

 Kane v. Edward J. Woerner & Sons, Inc.,
 
 543 So.2d 693, 694 (Ala.1989) (quoting
 
 Hill v. Sherwood,
 
 488 So.2d 1357, 1359 (Ala.1986)).
 

 “[Jjuror misconduct involving the introduction of extraneous materials warrants a new trial when one of two requirements is met: 1) the jury verdict is shown to have been actually prejudiced by the extraneous material; or 2) the extraneous material is of such a nature as to constitute prejudice as a matter of law.”
 

 Ex parte Apicella,
 
 809 So.2d 865, 870 (Ala.2001) (citing
 
 Knight v. State,
 
 710 So.2d 511, 517 (Ala.Crim.App.1997)) (juror had a brief discussion about the law of complicity with an attorney he knew, but the juror did not reveal the conversation to other jurors).
 
 See also Ex parte Arthur,
 
 835 So.2d 981 (Ala.2002) (juror’s introduction of information she found in a medical textbook about possible causes of migraine headaches);
 
 Pearson v. Fomby,
 
 688 So.2d 239, 242 (Ala.1997) (juror consulted a dictionary for the definition of the word “standard” in order to understand the meaning of the term “standard of care” in a medical-malpractice action).
 

 Discussion
 

 “[A]ctual prejudice may not be inferred from the exposure [to the extraneous material] itself.”
 
 Pearson v. Fomby,
 
 688 So.2d at 243. Instead, actual prejudice requires a showing that exposure to the extraneous material “actually motivated the jury or any individual juror to decide in [a] particular way.”
 
 Id.
 
 at 242. In the present case, there was no evidence indicating that the information in the manual had influenced the jury’s verdict or any individual juror’s decision. In fact, Juror Baldwin’s affidavit did not assert that the information in the manual had influenced her own decision, and the Williamses did not present the affidavit or testimony of any other juror. Thus, the Williamses did not show actual prejudice.
 

 With respect to prejudice as a matter of law, or “presumed prejudice,” the supreme court has held that prejudice as a matter of law does not arise from “mere exposure to [a] definition.”
 
 Pearson v. Fomby,
 
 688 So.2d at 245. In
 
 Ex parte Apicella,
 
 supra, the court stated that its holding in
 
 Pearson
 
 “serves to emphasize the limitations of the doctrine of ‘prejudice
 
 *692
 
 as a matter of law.’ ” 809 So.2d at 871. The
 
 Apicella
 
 court explained:
 

 “Generally, a presumption of prejudice applies only in a case in which the jury’s consideration of the extraneous material was ‘ “crucial in resolving a key material issue in the case.” ’
 
 Dawson v. State,
 
 710 So.2d 472, 475 (Ala.1997) (citing
 
 Hallmark v. Allison,
 
 451 So.2d 270, 271 (Ala.1984), and
 
 Ex parte Thomas,
 
 666 So.2d 855 (Ala.1995)).”
 

 809 So.2d at 872.
 
 See also Ex parte Arthur,
 
 835 So.2d at 984 (quoting
 
 Hallmark v. Allison,
 
 451 So.2d 270, 271 (Ala.1984)) (holding that movants for a new trial “must prove that, as a matter of law, ‘consideration of the extraneous facts was crucial in resolving a key material issue in the case,’ such that it should be presumed to have prejudiced the jury”).
 

 In
 
 Ex parte Arthur,
 
 a plaintiff claimed that her migraine headaches had been caused by the impact of a collision between the defendant’s vehicle and the vehicle in which the plaintiff was a passenger. The jury awarded the plaintiff minimal damages, and the plaintiff moved for a new trial, asserting that the jury had been improperly influenced by extraneous information. The plaintiff submitted an affidavit from one of the jurors stating that another juror who was a nurse-practitioner student had, during a break in the jury’s deliberations, consulted a medical textbook concerning the possible causes of migraine headaches. According to the affidavit, the nurse-practitioner student had been in favor of paying all the plaintiffs medical bills before he conducted the independent research but, after learning that migraine headaches can be caused by things other than accident impacts, “ ‘he agreed with the position that the [plaintiffs] medical bills should not be paid.’ ” 835 So.2d at 983.
 

 The supreme court held that the information derived from the medical textbook was “ ‘not the type of common knowledge we expect jurors to bring to deliberations,’ ” 835 So.2d at 985 (quoting
 
 Castaneda v. Pederson,
 
 185 Wis.2d 199, 215-16, 518 N.W.2d 246, 253 (1994)), “ ‘was crucial in resolving a key material issue in the case,’ ” 835 So.2d at 985 (quoting
 
 Hallmark v. Allison,
 
 451 So.2d at 271), and was prejudicial as a matter of law.
 

 In the present case, Juror Baldwin read to the other jurors the following safety rules pertaining to drivers and pedestrians:
 

 “DRIVERS MUST:
 

 • Exercise extreme care to avoid hitting a pedestrian.”
 

 “PEDESTRIANS MUST:
 

 • Use sidewalks where provided and usable.
 

 • Not stand in the roadway while hitchhiking.”
 

 “SAFETY RULES FOR PEDESTRIANS
 

 • Be aware of a driver’s difficulty in stopping quickly when streets are slippery and when visibility is poor.”
 

 In contrast to the extraneous material introduced to the jury in
 
 Ex parte Arthur,
 
 the information read to the jury in this case was nothing more than a set of common-sense maxims applicable to drivers and pedestrians. The information was within “ ‘the type of common knowledge we expect jurors to bring to deliberations,’ ”
 
 Ex parte Arthur,
 
 835 So.2d at 985 (quoting
 
 Castaneda,
 
 185 Wis.2d at 215-16, 518 N.W.2d at 253). Moreover, part of the information was beneficial rather than prejudicial to the Williamses. Although the manual stated that “drivers must
 
 exercise extreme care
 
 to avoid hitting a pedes
 
 *693
 
 trian,” the circuit court’s oral charge to the jury stated:
 

 “The duty owed by the defendant to the plaintiff was to
 
 exercise reasonable care
 
 not to injure or damage the plaintiff. Again, that is to exercise such care as a reasonable prudent person would have exercised under the same or similar circumstances.”
 

 (Emphasis added.) Prejudice as a matter of law cannot be presumed from exposure to information that is favorable to the mov-ant’s theory of the case.
 
 See Dawson v. State,
 
 710 So.2d 472 (Ala.1997) (juror’s unauthorized inspection of crime scene and telling other jurors that, in his opinion, undercover officer’s location would not have allowed officer to identify defendant could only have benefited defendant because juror’s conclusions undercut credibility of officer, who was a prosecution witness);
 
 Knight v. State,
 
 710 So.2d 511 (Ala.Crim.App.1997) (juror’s independent research into whether child victim could have contracted gonorrhea from contaminated towel as asserted by defendant charged with sexual abuse did not prejudice the defendant because the research tended to support defense theory of the case).
 

 Finally, those parts of the manual that were not explicitly beneficial to the Williamses were simply irrelevant to the issues presented in the lawsuit. Because Donyale Williams’s injury occurred in a parking lot, there were no sidewalks. No one was hitchhiking. There was no evidence indicating that the roadway was slippery or that the visibility was poor on the day in question. Irrelevant information cannot, by definition, be “crucial in resolving a key material issue in the case,”
 
 Hallmark v. Allison,
 
 451 So.2d at 271.
 

 Conclusion
 

 We hold that the Williamses failed to prove that the jury verdict was actually prejudiced by the extraneous material, and the extraneous material was not of such a nature as to constitute prejudice as a matter of law. Accordingly, the circuit court erred in granting the Williamses a new trial.
 

 REVERSED.
 

 PITTMAN and BRYAN, JJ., concur.
 

 THOMPSON, P.J., and MOORE, J„ concur in the result, without writings.
 

 [1]
 

 . " 'Generally, affidavits are inadmissible to impeach a jury's verdict[; however, an] affidavit showing that extraneous facts influenced the jury's deliberations is admissible.' "
 
 Ex parte Arthur,
 
 835 So.2d 981, 983 n. 1 (Ala.2002) (quoting
 
 Sharrief v. Gerlach,
 
 798 So.2d 646, 652 (Ala.2001), quoting in turn
 
 HealthTrust, Inc. v. Cantrell,
 
 689 So.2d 822, 828 (Ala.1997)).
 
 See also
 
 Rule 606(b), Ala. R. Evid.